The next case today is IDS Property Casualty Insurance Company v. Government Employees Insurance Company, appeal number 201407. Whenever you're ready, Mr. Scholar. Thank you. Good morning. So, I'd like to start this with where we began in this case, and that's with complaint. The complaint by IDS specifically has demanded relief under Mass General Laws Chapter 175, Section 186 for a misrepresentation in the negotiation of a policy of insurance. So, we look to the negotiation periods in this case, and we also look to the language within the policy which sets the parameters for when a negotiation occurs. Now, the policy specifically discusses three separate scenarios when a misrepresentation or action by an insured or a claimant can result in the avoidance of a claim or coverages under the policy. Now, those three scenarios are very important in this case. The first is, as we've discussed, the misrepresentation in the negotiation of a policy that appears in Paragraph 18 of the general provisions. The next is in the breach of the duty to cooperate with an insurer. And the final one, which is discussed at length by my brother in his brief, is actual fraud intended to deceive by an insured, and that appears on the coverage selections page of the policy. Now, the issue in this case is really whether or not a omission or a failure to volunteer potentially material information to an insurer at any time during the coverage period would result in the revocation of coverages or an avoidance of the policy. Now, our argument is that you have to read the policy as written. You can't read into the policy provisions that are not there. Now, the actual fraud intended to deceive, which the plaintiff, IDS, has relied upon in their brief, actually has the scienter knowingly. You have to then look to the insured's actual mental state in making the misrepresentation under that provision of the policy. No analysis... Excuse me. Yes. You talk about mental state. It seems to me that there's no intent to deceive that issue here. The client made material misrepresentations, and in that regard, you seem to be arguing that the renewal process doesn't matter in terms of whether there were material misrepresentations. My understanding is when the first renewal came up, your client was sent a renewal form with a declaration page which contained the information that was set forth when the policy was originally put in place. That is when this vehicle was covered, and at that time, the insurance company was told that the vehicle will be garaged in Massachusetts. The primary... The drivers will be the Feldsbergs. When the renewal form came in and the declaration page reflected that original information, your clients were told they don't have to return it if nothing's changed, but if something has changed, it's got to be reflected in the renewal form. They did not return the form suggesting that nothing had changed when, in fact, it turns out after investigation that almost immediately after the vehicle was covered, it's driven to Florida and it remains there, and the driver, a good part of the time, is, I believe, the daughter-in-law of the Feldsbergs. So, you're saying that renewal... That they had no obligation at that event of renewal to tell the insurance company of those changed circumstances? So, my position is that the obligation to provide updated information if it was breached under the terms of the policy does not result in an avoidance of the coverages. The policy, as I've stated, speaks to only three scenarios where a coverage can be avoided, and that's a misrepresentation in a negotiation, and my position is that these renewal forms... Why isn't the renewal a new negotiation? So, the reason why the renewal is not a new negotiation is because there is no requirement for the insured to affirmatively respond, and the policy actually separates a renewal application... But there is if there's a change in the policy. If I may, Your Honor, the renewal application is specifically discussed within the policy, and a renewal application is discussed as something that an insured would be required to fill out and return, and if they did not do that, then the insurer could then cancel the policy. This renewal form is something that we contend is a ministerial renewal. It's something that's discussed in the case law as not a negotiation. It's, I believe, Quincy Mutual, which is cited in the cases that the obligation... Why wouldn't it be ministerial if nothing has changed? If there's a change which affects the price or the coverage, it seems to me that that is not ministerial. So, the ministerial renewal has to do with the actual process and procedure from the insurer, as opposed to the response from the insured. That our position is that the ministerial nature is actually set by the insurer by sending out something that they didn't require an affirmative response, and that's something that's consistent in the prior case law. Again, that Quincy Mutual case, I believe, is very much on point. I thought the renewal form made clear that if there are changes, then the insurance company has to be advised. There's no need to return the renewal form if nothing has changed. Charleston's pointing out, okay, you can say that's ministerial, but your client, it seems to me, was advised that an affirmative act is required, that there's been a change. They have to indicate that what's reflected on that declaration page, reflects the original terms of coverage. That doesn't apply anymore. So, Your Honor, if I may, the policy itself, again, speaks to those actual negotiation periods, and I think this is actually a good opportunity to address the issue of estoppel. On those renewal forms, there was a cover letter, and there's testimony in this case that the cover letter to the Felbergs was actually an instruction to the Felbergs as to which coverages, which aspects of the renewal to actually review. That cover letter specifically pointed to the coverages, the deductibles, and the limits on the insurance policy. It didn't say anything about looking at the place of garaging. It didn't say anything about looking at usual or customary operators. So, our argument is that there is actually evidence here of an estoppel, where they have specifically identified, as is their obligation in the case law, the portions of that coverage selections page that they deemed material to the Felbergs. They cannot now complain that they didn't receive updated information on portions that they did not specifically point out in that instruction. So, if I may get back to the issue of the policy language. We are not supposed to read into the policy provisions that are not there. If we look at the misrepresentation and negotiation portion, and we look at the actual fraud intended to deceive within the coverage selections page, taking those two points of the policy in isolation, we cannot then read in as the district court did that a failure to update a change that might affect the premium results in an avoidance of the policy outside the negotiation period where there is not a specific finding of fraudulent intent by Mr. Felberg. That is the only way we get to an avoidance of the policy per the provisions of this policy outside of a specific negotiation period. Where there's no finding, again, of fraud or fraudulent intent by Mr. Felberg, we cannot get to the result reached by the district court. It's actually perfect timing, Mr. Scholard. Unless the judges have further questions at this point, we will hear from Mr. Katzenstein. All right, Mr. Katzenstein. Thank you. Yes. Thank you and good morning again, Jeffrey Katzenstein, on behalf of the appellee your honors. As I see it, there are three questions at issue today. One, did the Felbergs have a duty under the policy contract to inform Ameriprise of changes to the principal place of garaging or customary operators of the insured vehicle? Two, did the Felbergs breach the policy contract by failing to fulfill that duty? And three, do any of GEICO's affirmative defenses have merit? My brother stated a couple of times that you can't read terms into the policy that aren't there. But as I think the court recognizes, the terms that are there very clearly show that there was a duty, the Felbergs had a duty to inform Ameriprise of any changes to the principal place of garaging or customary operators of the vehicle. The policy itself says you must inform us of any changes which may have a material effect on your insurance coverage or premium charges, including the description, ownership, type of usage and place of garaging of your auto and the household members and individuals who the coverage selections page, which forms a part of the policy contract and was mailed to the Felbergs several times over the years, says, notice, you must notify us of changes that have occurred prior to the renewal of this policy and during the policy period. Counsel, is that coverage selection document, is that as part of the renewal process, is that sent to the insured? Is that part of the correspondence they get at the time of renewal? The coverage selections page was initially mailed to the Felbergs at the policy inception. It was also mailed annually to the Felbergs each time the policy was renewed. Along with those renewal mailings was a renewal form which accompanied the mailings and said, must inform us of any changes which have a material effect on your insurance coverage or premium changes. My brother has brought up the cover letter to those renewal forms. There is no principle of contract law that states that in order to enforce a contract provision, a party needs to instruct the other party to read the contract carefully. When you send a contract to another party, in any scenario, and the policy is of course a contract, each party is obligated to read the contract. It's no defense that the Felbergs may have not understood this duty and that has been recognized repeatedly by Massachusetts courts. Does the cover specifically say, look at these, I mean is it an exclusionary cover or does it say pay particular attention to these three? What does it say? It does not, I mean my brother has pointed out that it directs the insureds to make sure that all of their coverages are adequate, but it does not state, it does not instruct them to read the policy carefully. But there's no requirement under the law that Ameriprice had to do that. This again is a contract. The full policy was sent to the Felbergs at inception and the coverage selections pages were sent to them each year. As they changed their policy, I mean this was a period that the policy inception was back in 2011, the accident was in 2018, so this renewed many times. They added and removed vehicles. The Highlander was added in 2016 and so there were two renewals before this accident occurred. And so there's no question that for this period of almost two years after the Highlander that was principle place of garaging for the vehicle was Florida. Had the cheaper insurance too. That's right. Although Ameriprice, I mean as addressed in our brief, would not have written the policy if it had known that this vehicle was being garaged principally in Florida while the the fact that there was an additional unlisted operator resulted in a lower premium for the Felbergs. So again, no factual dispute that this vehicle for almost two years was garaged exclusively in Florida. And then Mr. Felberg's niece, Ms. Fasani Felberg, by her own admission drove this vehicle about three times a week for at least half the year. This was six to seven months during which she had possession of this vehicle. And so Massachusetts law is clear that statements made in an application for insurance are in the nature of continuing representations. They speak from the time the application is accepted or the policy is issued. So at some point the Felbergs, after understanding that this vehicle has been exclusively in Florida for two years, we've been giving the vehicle and the keys to our niece and telling her she can drive it as much as she wants. Must have known that these representations that they had given to Ameriprise, which continue to be stated on their coverage selections page, are no longer true. You're not arguing, as I understand it. It doesn't matter to you whether there was an intent to deceive, whether they thought they could get away with something. I thought your position was that however this came about, the failure to disclose to the insurance company where their vehicle's been garaged, who the customary operator is, those are material misrepresentations. And that alone is enough, apart from state of mind. That alone is enough. That's correct, your honor. Intent would be an issue of fact. And while we wouldn't concede that he didn't intend to deceive Ameriprise, we don't need that to disclaim coverage. The principle is, as you know, is either the misrepresentation is intentional or it results in a lower policy premium or the insurer would not have written the policy at all had it known the true facts. And so that's what we're relying upon, the latter, that this Ameriprise would not have written this policy if it had known the Highlander was principally garaged in Florida. And it's undisputed that the unlisted operator resulted in a lower premium for the Feldbergs. With regard to this statute, Chapter 175, Section 86, what GEICO is attempting to do, it seems to me, is really kind of pigeonhole this into the language of the statute, which is rather narrow. As the SJC has explained, the statute's really a restatement of the common law duty for insurance companies to show that a misrepresentation of a vehicle is intentional. Misrepresentation is material before an insurance policy can be avoided. And so GEICO seems to contend that under the statute, an insurer can only deny coverage where misrepresentation is made in an application or it's affirmatively made in a policy change request. There's nothing in the issue here. GEICO hasn't cited any case law standing for that proposition. And of course, insurers can deny coverage for misrepresentations at other times. I mean, when an insured makes a material misrepresentation in a claim investigation, that's well-accepted grounds for denying coverage for a claim. And so I think the court's potential interpretation that the renewals here may have been considered a negotiation of policy, that's a fair interpretation. But I don't think that's even necessary. The misrepresentation, there's an affirmative misrepresentation when at the inception of the policy. And that really, once the changes occurred, once that vehicle was garaged exclusively in Florida, once Ms. Fasani Feldberg was driving that vehicle on a regular basis, that representation ripened into a misrepresentation. Mr. Katzenstein, I'd like to ask you a different question regarding the protective order. And just to narrow the question for purposes of discussion, I'll go to the request for information on policies and procedures for claims investigation and settlement. The provision in the renewal instructions that we've been talking about primarily are those which may, according to the instructions, result in a premium change or might affect coverage. How would an insured know that upfront, or specifically in this case, how do we know whether it may affect coverage if we don't know anything about policies and procedures for claims investigation and settlement, if we don't know whether the company has declined coverage in those instances where there has been a change in garaging or customary operator and no notification? Thank you, Your Honor. And first, I'd like to point out that I'm sure the court is aware, this portion of the appeal is subject to a different standard of review than the summary judgment and motion for reconsideration. The trial judge has broad discretion in ruling on discovery issues. Those types of orders are only overturned where they're plainly wrong. Here, GEICO was trying to obtain discovery into any other claim that was ever filed under the policy, and of course, as Your Honor just noted, general policies and procedures. This is a declaratory judgment action into an issue of settlement practices under Chapter 176D. None of the defendants ever asserted any claims in this lawsuit under Chapter 176D or Chapter 93A. And so, in order to get into Ameriprise's policies and procedures, I think you'd really need to have an allocation or some cause of action into... The question is whether any changes must inform us of any changes which may have a material effect on your insurance coverage or premium changes. How would a policyholder, how would an insured know that if they don't have any idea whether it might affect coverage? One way to find out would be to determine whether coverage was denied in other instances where there has been a claim like this. Your Honor, with respect, I don't think we would need to look at other claims because this is the clear language of the policy. The policy makes clear that this duty is present, that there is a duty to inform the insurer of... So, it's a strict liability provision. I mean, who gets to decide whether it may have a material effect? Well, the court would decide whether it has a material effect because there... One way to do that would be to find out what the practice has been with other claims, wouldn't it? Well, Your Honor, I think if the particular insured here had made an allegation that, look, I had another claim earlier on with this policy and they treated it differently, they gave me coverage, they allowed coverage despite the presence of this failure to report a change, then absolutely, any documents with respect to that claim would be discoverable. I certainly agree with you on that point. That's what the court did in this case, actually. This motion for protective order was partially denied and the court allowed discovery into one prior claim. And there's nothing there because this effort to obtain information on other claims and broad corporate practices was a phishing expedition. Are there other questions from the panel? I'm all set. I'm fine. Thank you. Thank you. Thank you both. All right. I think that about does it. Thank you to both counsel. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.